863 So.2d 450 (2004)
ALL CHILDREN'S HOSPITAL, INC., and Florida Birth-Related Neurological Injury Compensation Association, Appellants,
v.
DEPARTMENT OF ADMINISTRATIVE HEARINGS, Courtney Lynn Glenn, a minor, by and through Gregory H. Fisher, as court-appointed guardian of the property of Courtney Lynn Glenn, Anna Lentini, f/k/a Anna Glenn, and Christopher Glenn, individually, Appellees.
No. 2D02-1638.
District Court of Appeal of Florida, Second District.
January 14, 2004.
*451 C. Howard Hunter and Marie A. Borland of Hill, Ward & Henderson, P.A., Tampa, for Appellant All Children's Hospital, Inc.
Kenneth J. Plante, Wilbur E. Brewton, Kelly B. Plante, and Tana Duden Storey of Roetzel & Andress, L.P.A., Tallahassee, for Appellant Florida Birth-Related Neurological Injury Compensation Association.
No Appearance for Appellee Department of Administrative Hearings.
Steven C. Ruth and Jennifer Beltz McCamey of Beltz Ruth Magazine Newman & Kohl, P.A., St. Petersburg, for Appellees Courtney Lynn Glenn and Anna Lentini.
Timothy F. Prugh and Theodore "Ted" E. Karatinos of Prugh, Holliday, Deem, & Karatinos, P.L., Tampa, for Appellee Christopher Glenn.
CANADY, Judge.
All Children's Hospital, Inc., challenges an order of an administrative law judge (ALJ), which concluded that the Florida Birth-Related Neurological Injury Compensation Plan (the plan) did not provide the exclusive remedy for injuries suffered by an infant born to appellees Anna Lentini and Christopher Glenn. The ALJ determined that the infant's parents were not given the statutory notice which was necessary to shield All Children's from tort liability for the infant's injuries. We conclude that in making that determination the ALJ exceeded his jurisdiction. We therefore reverse and remand for further administrative proceedings.

I. BACKGROUND
A. Statutory Framework
The plan was established by the Florida Birth-Related Neurological Injury Compensation Act (NICA), which was originally enacted pursuant to chapter 88-1, Laws of Florida, and became effective on February 8, 1988. See §§ 766.301-.316, Fla. Stat. (Supp.1988). The version of the plan applicable here is found in sections 766.301 through 766.316, Florida Statutes (1997), and in amendments to the 1997 provisions *452 as set forth in sections 766.301 and 766.304, Florida Statutes (Supp.1998).[1]
NICA was created based on a legislative determination that "[t]he costs of birth-related neurological injury claims are particularly high and warrant the establishment of a limited system of compensation irrespective of fault." § 766.301(1)(d). Eligibility for NICA compensation is based on a "determin[ation] that an infant has sustained a birth-related neurological injury and that obstetrical services were delivered by a participating physician at birth." § 766.31(1). A detailed definition of "[b]irth-related neurological injury" is set forth in section 766.302(2); "[p]articipating physician" is defined in section 766.302(7). A scheme of assessments on physicians and hospitals to fund the plan is set forth in section 766.314. Section 766.316[2] requires that "[e]ach hospital with a participating physician on its staff and each participating physician"subject to certain exceptions not relevant here"shall provide notice to the obstetrical patients ... as to the limited no-fault alternative for birth-related neurological injuries," i.e. the plan.
A fundamental element of NICA is its exclusive remedy provision. Section 766.303(2), Florida Statutes (1997), provides:
The rights and remedies granted by this plan on account of a birth-related neurological injury shall exclude all other rights and remedies of such infant, her or his personal representative, parents, dependents, and next of kin, at common law or otherwise, against any person or entity directly involved with the labor, delivery, or immediate post-delivery resuscitation during which such injury occurs, arising out of or related to a medical malpractice claim with respect to such injury; except that a civil action shall not be foreclosed where there is clear and convincing evidence of bad faith or malicious purpose or willful and wanton disregard of human rights, safety, or property, provided that such suit is filed prior to and in lieu of payment of an award under ss. 766.301-766.316. Such suit shall be filed before the award of the division becomes conclusive and binding as provided for in s. 766.311.
Although the text of NICA has no express provision on this point, an essential feature of the statutory scheme as it has been implemented is that the availability of immunity under section 766.303(2) is contingent on the giving of notice pursuant to section 766.316. See Galen of Fla., Inc. v. Braniff, 696 So.2d 308, 311 (Fla.1997) (holding that "notice under the plan was intended to serve as a condition precedent to immunity").
B. Facts of the Case
The female infant, whose injury was the basis for the underlying claim, was born at Bayfront Medical Center on September 30, 1997, and purportedly suffered a birth-related neurological injury. Neonatal nurses provided to Bayfront by All Children's administered immediate post-delivery *453 resuscitation to the infant, as well as subsequent resuscitation and other neonatal care.
On June 30, 1998, the parents filed a complaint in the circuit court alleging civil causes of action for medical malpractice against the mother's obstetrician, the professional partnership to which he belonged, and Bayfront for their negligence with respect to the labor and delivery of the subject infant, as well as the prenatal care provided to the mother. An amended complaint against those parties was filed in October 1998. In February 2000, the parents settled with the obstetrician and his partnership for $1 million. The lawsuit was thus dismissed as to the doctor and the partnership, and in February 2001, a second amended complaint was filed naming Bayfront and, for the first time, All Children's as defendants.
In March 2001, the parents settled with Bayfront for $100,000. The suit was dismissed as to Bayfront, and a third amended complaint was filed naming All Children's as the only defendant. In the third amended complaint, the parents alleged that All Children's was negligent in its care of the infant "after [her] arrival at the newborn nursery."
In June 2001, the civil action was abated, because the trial court determinedon All Children's motionthat the action could not proceed until the parents had obtained an administrative determination as to whether the infant had suffered a birth-related neurological injury compensable under the plan. On August 29, 2001, the parents filed a petition with the appellant Florida Birth-Related Neurological Injury Compensation Association (the association). When the association determined that the neurological injury for which the parents were seeking redress was not compensable under the plan, the association requested a formal administrative hearing before an ALJ.
A final administrative hearing was conducted in February 2002. At that hearing, All Children's sought to establish its immunity from tort liability. It insisted that the infant had suffered a birth-related neurological injury which was compensable under the plan and that the parents' exclusive remedy for their daughter's injury was therefore limited to no-fault compensation under the plan.
In April 2002, the ALJ issued a final written order finding that, while the mother's obstetrician had given timely notice under the plan, Bayfront had not. The ALJ further found that Bayfront's failure to give notice was not occasioned by any kind of medical emergency that would have excused the failure. The ALJ acknowledged that, although All Children's supplied contract employees to Bayfront, All Children's was "not among those persons or entities required to give notice," because All Children's was "a pediatric institution that does not offer obstetric services[ ] and has no `participating physicians on its staff.'" The ALJ ultimately concluded, however, that because Bayfront failed to give notice, "neither the hospital, the participating physician, nor any other provider (such as All Children's Hospital), may invoke NICA exclusivity to defeat a civil claim." The ALJ found that, where multiple health care providers were involved, no provision of the NICA statutory scheme provided for independent, severable immunity for any health care providerplan participant or otherwise. Rather, the ALJ determined that immunity was a collective, all-or-nothing matter and that a provider's failure to give noticeif that provider was required to give notice would prevent anyone from invoking the exclusive remedy provision and being shielded from tort liability.
*454 The administrative order went on to state that it was within the ALJ's exclusive administrative province to determine all matters of NICA compensabilityincluding the adequacy of noticeand that notice was a condition precedent to the invocation of the immunity provisions of the statute. The ALJ determined that his conclusion regarding the inadequacy of notice was dispositive of the administrative case. He therefore declared that any further findings or conclusionsi.e., those concerning the compensable nature of the injurywere unnecessary. Finally, the ALJ's order directed that "[p]etitioners are accorded 30 days from the date of this Order to elect, in writing, whether to waive notice and pursue a claim for Plan benefits or whether to pursue their civil remedies in lieu of pursuing a claim for Plan benefits." A subsequent order entered in this case indicated that the parents "elected to pursue their civil remedies [against All Children's] in lieu of a claim for Plan benefits."

II. ANALYSIS
On appeal, All Children's contends the ALJ erred in determining that its immunity from suit under NICA was dependent on notice from both the mother's obstetrician and Bayfront. We decline to reach that issue, because we conclude that, under the governing statutory language, the ALJ's jurisdiction was restricted to determining whether the claim was covered by NICA and did not extend to the issue of whether a provider is entitled to invoke the exclusive remedy provision of the statute.
A. Standard of Review
Our review of the ALJ's interpretation of the plan requirements is de novo. See, e.g., Fluet v. Fla. Birth-Related Neurological Injury Comp. Ass'n, 788 So.2d 1010, 1012 (Fla. 2d DCA 2001); Schur v. Fla. Birth-Related Neurological Injury Comp. Ass'n, 832 So.2d 188, 191 (Fla. 1st DCA 2002); Nagy v. Fla. Birth-Related Neurological Injury Comp. Ass'n, 813 So.2d 155, 159 (Fla. 4th DCA 2002). According to Gugelmin v. Division of Administrative Hearings, 815 So.2d 764, 767 (Fla. 4th DCA 2002), this court is authorized to set aside or modify a final administrative order, if there has been an erroneous interpretation of NICA or the ALJ has exceeded the scope of his authority.
B. Statutory Provisions Governing the Authority of ALJs Under NICA
From its inception, NICA was designed to provide compensation for covered injuries through an administrative process. NICA has always provided that an ALJ "shall hear and determine all claims filed pursuant to" its provisions. § 766.304, Fla. Stat. (1997). The precise role of ALJs under the statutory scheme, however, has been the subject of considerable dispute and controversy.
In Florida Birth-Related Neurological Injury Compensation Ass'n v. McKaughan, 668 So.2d 974 (Fla.1996), the supreme court held that the determination of whether a particular injury was a "birth-related neurological injury" under NICA was not within the exclusive jurisdiction of an ALJ. This question was subsequently addressed by the legislature with the enactment of chapter 98-113, Laws of Florida. In that legislation, language was added to NICA to clarify the role of ALJs in adjudicating NICA claims. The 1997 version of section 766.301(1)(d), which set forth one of the many legislative reasons for NICA, was amended by the addition of this statement: "The issue of whether such [birth-related neurological injury] claims are covered by this act must be determined exclusively in an administrative *455 proceeding." § 766.30(1)(d), Fla. Stat. (Supp.1998). The 1997 version of section 766.304 was also amended by the addition of language including the following:
The administrative law judge has exclusive jurisdiction to determine whether a claim filed under this act is compensable. No civil action may be brought until the determinations under s. 766.309 have been made by the administrative law judge. If the administrative law judge determines that the claimant is entitled to compensation from the association, no civil action may be brought or continued in violation of the exclusiveness of remedy provisions of s. 766.303.
§ 766.304, Fla. Stat. (Supp.1998). Section 766.309, Florida Statutes (1997)which was not affected by the 1998 amendmentssets forth the specific determinations the ALJ is required to make:
(1) The administrative law judge shall make the following determinations based upon all available evidence:
(a) Whether the injury claimed is a birth-related neurological injury. If the claimant has demonstrated, to the satisfaction of the administrative law judge, that the infant has sustained a brain or spinal cord injury caused by oxygen deprivation or mechanical injury and that the infant was thereby rendered permanently and substantially mentally and physically impaired, a rebuttable presumption shall arise that the injury is a birth-related neurological injury as defined in s. 766.302(2).
(b) Whether obstetrical services were delivered by a participating physician in the course of labor, delivery, or resuscitation in the immediate post-delivery period in a hospital; or by a certified nurse midwife in a teaching hospital supervised by a participating physician in the course of labor, delivery, or resuscitation in the immediate post-delivery period in a hospital.
(c) How much compensation, if any, is awardable pursuant to s. 766.31.
(2) If the administrative law judge determines that the injury alleged is not a birth-related neurological injury or that obstetrical services were not delivered by a participating physician at the birth, she or he shall enter an order and shall cause a copy of such order to be sent immediately to the parties by registered or certified mail.
C. The Limits of ALJ Jurisdiction Under NICA
In the instant case, the ALJ did something NICA gave him no authority to do and failed to do what the statute required him to do. There is no basis in NICA for the ALJ's foray into the issue of immunity from tort liability under section 766.303(2) and the related issue of notice under section 766.316. And there is no justification under NICA for the ALJ's failure to make a determination concerning the compensability of the injury which is the subject of the underlying claim.
The responsibilities of the ALJ are succinctly set forth in section 766.309. The ALJ must address the two basic questions which determine if a claim is compensable under the plan: (1) "[w]hether the injury claimed is a birth-related neurological injury," § 766.309(1)(a); and (2) "[w]hether obstetrical services were delivered by a [covered person] in the course of labor, delivery, or resuscitation in the immediate post-delivery period in a hospital," § 766.309(1)(b). If both of these questions are answered in the affirmative, the injury is compensable under the plan. If either question is answered in the negative, the injury is not compensable. Since the adoption of the 1998 amendments, NICA is very clear that the determination of whether an injury is compensable is exclusively *456 within the province of the ALJ, see § 766.304, Fla. Stat. (Supp.1998)subject, of course, to the right to pursue an appeal of the ALJ's determination, see § 766.311, Fla. Stat. (1997).
The issue of immunity from tort liability and the related issue of notice are an entirely different matter. There is nothing in section 766.309 or elsewhere in NICA that gives the ALJ any responsibility or authority to determine either (a) that notice under section 766.316 was or was not properly given, or (b) that a provider is or is not entitled to invoke the immunity from tort liability provided for in section 766.303(2). These issues are entirely distinct and separate from the issue of compensability under the plan.
The issue of notice is only relevant to the issue of whether a provider is eligible under section 766.303(2) for immunity from tort liability. See Galen, 696 So.2d at 309-11. Thus, the provision of notice has no bearing whatsoever on whether a claim is compensable. The availability of compensation under the plan is alike available to claimants who received proper notice under section 766.316 and to claimants who did not receive such notice. See, e.g., O'Leary v. Fla. Birth-Related Neurological Injury Comp. Ass'n, 757 So.2d 624, 627 (Fla. 5th DCA 2000) ("recogniz[ing] that lack of proper notice does not affect a claimant's ability to obtain compensation from the [p]lan"). A claimant cannot be deprived of compensation under the plan due to the failure of a provider to give the required notice. See id.
Nothing in the 1998 amendments to NICA did anything to extend the jurisdiction of the ALJ to the issues of notice and immunity from tort liability. Insofar as those amendments addressed the issue of the jurisdiction of the ALJ, they simply made clear thatcontrary to the holding in McKaughanthe ALJ "has exclusive jurisdiction to determine whether a claim filed under [NICA] is compensable." § 766.304. The 1998 amendments also established that "[n]o civil action may be brought until the determinations [regarding compensability] under s. 766.309 have been made by the [ALJ]." Id. No change was made in the determinations the ALJ is required to make under section 766.309.
In cases such as the instant one, where the potential claimant wishes to pursue tort remedies and to forgo any compensation from the plan, the task of the ALJ is limited to determining whether the injuries were compensable under section 766.309(1), and thus "covered by [NICA]," in accord with section 766.301(1)(d) (Supp.1998). In cases where the claimant seeks compensation from the plan, once an injury is determined to be compensable, the ALJ must go on to determine the amount of compensation that is awardable. See §§ 766.309(1)(c), .31.
If the ALJ determines that a claim is not compensable under NICA, there can, of course, be no immunity from liability under section 766.303(2). If the ALJ determines that a claim is compensable but the potential claimant desires to forgo compensation under NICA and to pursue a civil action for tort remedies, a determination must then be made concerning whether that civil action is "in violation of the exclusiveness of remedy provisions of s. 766.303." § 766.304. That determination concerning tort immunity will turn on whether proper notice was given as required by section 766.316. Galen, 696 So.2d at 311 (stating that propriety of provider's NICA notice must be determined on a "case-by-case basis[,] [b]ecause the assertion of NICA exclusivity is an affirmative defense [in a civil suit and] factual disputes concerning notice should be submitted to the [trier of fact]").
The factual and legal issues related to notice and tort immunity are within the jurisdiction of the circuit court in which a *457 tort claim is brought. They are not within the jurisdiction of the ALJ. Those issues are entirely irrelevant to the determination the ALJ must make concerning whether compensation is available from the association for a particular claim. It is the circuit court which must address those issues in deciding whether a civil action will be allowed to proceed in the circuit court. It, therefore, was error for the ALJ in the instant case to determine that the notice given was insufficient and that All Children's was not entitled to immunity from tort liability.
The ALJ further erred in requiring the claimants to make an "election of remedies." See Bayfront Med. Ctr., Inc. v. Div. of Admin. Hearings, 841 So.2d 626, 628 (Fla. 2d DCA 2003) (reversing ALJ's "rulings regarding the election of remedies and the finding regarding [NICA's] exclusivity of remedy provisions"); cf. Gugelmin, 815 So.2d at 768 (reversing administrative order of ALJ "requiring [claimants] to elect between remedies and denying the hospital statutory immunity despite its timely notice under the [p]lan"). Finally, the ALJ's errors of addressing the issues of notice, immunity, and election of remedies led him into the error of failing to carry out his responsibility to determine whether the injury was compensable under NICA.
We realize that in O'Leary the Fifth District held that the adequacy of a provider's notice is part of a compensability determination and that notice is thus a matter within the exclusive province of the ALJ. 757 So.2d at 626-28. The O'Leary court observed that its "conclusion that the administrative forum is the intended exclusive forum to determine the notice question eliminates the `ping-pong effect,' that is, the trial court and the [ALJ] each throwing the case back to the other on this question." Id. at 627. For the reasons already stated, however, we conclude that the text of NICA does not support the conclusion reached by the Fifth District in O'Leary that the question of proper notice is part of the compensability determination the ALJ is required to make. Insofar as the supposed "`ping-pong effect'" is concerned, we simply note that we are constrained to follow the ball wherever the legislature chooses to send it.
For the same reasons that we disagree with O'Leary, we also differ with the decision of the Fourth District in Behan v. Florida Birth-Related Neurological Injury Compensation Ass'n, 664 So.2d 1173 (Fla. 4th DCA 1995), and the decision of the Third District in University of Miami v. M.A., 793 So.2d 999 (Fla. 3d DCA 2001). Behan holds that the adequacy of a provider's notice under NICA must be determined by the ALJ before he can assume jurisdiction to make a compensability determination. 664 So.2d at 1174. M.A. relies on O'Leary in holding that the issue of whether proper notice was given is an issue to be decided by the ALJ. M.A., 793 So.2d at 1000.
Accordingly, we certify direct conflict with O'Leary, Behan, and M.A. pursuant to article V, section 3(b)(4), Florida Constitution, and Florida Rule of Appellate Procedure 9.030(a)(2)(A)(vi).

III. CONCLUSION
The ALJ's order is reversed in its entirety, and the case is remanded for the ALJ to make a determination concerning compensability as required by law and in conformance with this opinion.
Reversed and remanded; conflict certified.
NORTHCUTT and STRINGER, JJ., concur.
NOTES
[1] As will be discussed in more detail later in this opinion, the 1998 amendments to sections 766.301 and 766.304 added language emphasizing that a determination as to the compensability of a NICA claim is a matter within the exclusive jurisdiction of an administrative law judge. Those amendments, which took effect on July 1, 1998, "apply only to [administrative NICA] claims filed on or after that date and to that extent ... apply retroactively regardless of the date of birth." Ch. 98-113, § 6, at 814-15, Laws of Fla.
[2] Section 766.316 was also amended in 1998. See § 766.316, Fla. Stat. (Supp.1998). However, that amendment is inapplicable here because it "appl[ies] only to causes of action [actually] accruing on or after" July 1, 1998. Ch. 98-113, § 7, at 815, Laws of Fla.