880 So.2d 1253 (2004)
Clarice TABB, on behalf of and as parent and natural guardian of Dylan TABB, a minor, Appellant,
v.
FLORIDA BIRTH-RELATED NEUROLOGICAL INJURY COMPENSATION ASSOCIATION and Grace Valente, M.D., And Memorial Healthcare Group, Inc., d/b/a Memorial Hospital Jacksonville, Intervenors, Appellees.
No. 1D03-3512.
District Court of Appeal of Florida, First District.
August 30, 2004.
*1254 Richard L. Nichols, Jacksonville, for Appellant.
Wilbur E. Brewton and Kelly B. Plante of Roetzel & Andress, L.P.A., Tallahassee, for Florida Birth-Related Neurological Injury Compensation Association, and James C. Rinaman and Sonya H. Hoener of Marks Gray, P.A., for Memorial Healthcare Group, Appellees.
KAHN, J.
Appellant Clarice Tabb challenges a final order of an administrative law judge (ALJ) on her claim for compensation under the Florida Birth-Related Neurological Injury Compensation Plan (NICA Plan) contained in sections 766.301-.316, Florida Statutes (2001). As a threshold matter, Tabb challenges the subject matter jurisdiction of the ALJ to determine whether she received the required notice, pursuant to section 766.316, that appellee Memorial Healthcare Group (Memorial) participated in the Plan.[1] Tabb also argues *1255 that the ALJ erred in applying a presumption that the NICA Plan brochure was delivered to her because Memorial introduced evidence of a routine of providing such brochures to patients at pre-registration. We find that the ALJ did have subject matter jurisdiction to determine the notice issue, but because we agree, as Tabb argues, the ALJ erroneously applied a presumption, we reverse and remand this case for further proceedings.

I. Background
In August 2002, appellant Clarice Tabb, individually and as mother and next friend of Dylan Tabb, filed a petition with the Division of Administrative Hearings seeking compensation under the NICA Plan. In her petition, Tabb, although asserting that Dylan had suffered an injury compensable under the Plan, claimed she had not received notice that Memorial participated in the Plan. Under the law, patients who do not receive notice may proceed in court against a health care provider and are not limited to the NICA Plan's no-fault remedies. See Galen of Fla., Inc. v. Braniff, 696 So.2d 308, 309-10 (Fla.1997) ("[T]he only logical reading of the statute is that before an obstetrical patient's remedy is limited by the NICA plan, the patient must be given pre-delivery notice of the health care provider's participation in the plan.... [T]he purpose of the notice is to give an obstetrical patient an opportunity to make an informed choice between using a health care provider participating in the NICA plan or using a provider who is not a participant and thereby preserving her civil remedies."). The Florida Birth-Related Neurological Injury Compensation Association (NICA) responded to the petition and agreed the claim was compensable.
A hearing took place regarding whether the notice provisions of the Plan were satisfied, whether NICA's proposal to accept the claim for compensation should be approved, and the amount of compensation that should be awarded. On the notice issue, Memorial presented evidence that when Tabb came to the hospital to pre-register, the hospital had a routine pursuant to which the registration clerk provided the patient with a preadmission packet and this packet included a copy of the NICA brochure. Tabb presented evidence that the routine, assuming there was one, was not followed. She testified that she did not receive the NICA brochure when she pre-registered and no one discussed the NICA Plan with her. She was not asked to sign a receipt that she received the brochure. She testified, "I am certain that I was never even aware of NICA and I never signed any forms concerning NICA." Tabb could not recall who pre-registered her at the hospital and when asked if it was the clerk, Leslie Joseph, who had testified in support of Memorial's routine, Tabb answered, "Her hair was different." Tabb indicated it was "possible" she was the clerk but she testified, "I'm not exactly sure who was there that particular day." Joseph testified that she did not recall preregistering Tabb and that another clerk also performs that task. Joseph testified that both she and the other clerk are African-American women, and that the other clerk has longer hair, is lighter, taller, and a little thinner.
*1256 In his order, the ALJ found the notice provisions were satisfied. In particular, with regard to notice provided by Memorial, the ALJ made the following findings:
11. As for Memorial Hospital and the notice issue, it is resolved that on September 20, 2001, when Ms. Tabb presented to Memorial Hospital for pre-registration, the hospital had an established routine whereby the registration clerk would provide the prospective patient with a preadmission packet, which included a copy of the NICA brochure. Consequently, there being no compelling proof to the contrary, it must be resolved that, [when] she presented for pre-registration, the hospital provided Ms. Tabb a copy of the NICA brochure. Watson v. Freeman Decorating Co.

The ALJ also found that the claim should be accepted and explained that the parties had stipulated to an award. Tabb has appealed.

II. Analysis

A. ALJ's Jurisdiction to Determine Notice
Despite the fact that she brought the claim in the administrative forum, Tabb now argues for the first time that the ALJ did not have jurisdiction to decide this issue. We address the issue because subject matter jurisdiction cannot be waived and can be raised at any time. See, e.g., Seven Hills, Inc. v. Bentley, 848 So.2d 345, 350 (Fla. 1st DCA 2003) ("Subject matter jurisdiction, which arises only as a matter of law, cannot be created by waiver, acquiescence or agreement of the parties, by error or inadvertence of the parties or their counsel, or by the exercise of the power of the court."); MCR Funding v. CMG Funding Corp., 771 So.2d 32, 35 (Fla. 4th DCA 2000) ("Subject matter jurisdiction may not be conferred upon the court by the consent of the parties, and the lack of subject matter jurisdiction may be raised for the first time on appeal.").
The ALJ's authority derives from section 766.304, Florida Statutes (2001):

The administrative law judge shall hear and determine all claims filed pursuant to ss. 766.301-766.316 and shall exercise the full power and authority granted to her or him in chapter 120, as necessary to carry out the purposes of such sections. The administrative law judge has exclusive jurisdiction to determine whether a claim filed under this act is compensable. No civil action may be brought until the determinations under s. 766.309 have been made by the administrative law judge. If the administrative law judge determines that the claimant is entitled to compensation from the association, no civil action may be brought or continued in violation of the exclusiveness of remedy provisions of s. 766.303. If it is determined that a claim filed under this act is not compensable, neither the doctrine of collateral estoppel nor res judicata shall prohibit the claimant from pursuing any and all civil remedies available under common law and statutory law....
(emphasis added). In order to "hear and determine" a claim, an ALJ must, almost of necessity, decide whether notice was given, because if no notice was given, the exclusivity provision of the statute does not apply. See § 766.316, Fla. Stat. (2001); Galen, 696 So.2d at 310-11. Further, an ALJ has "exclusive jurisdiction" to determine whether a claim is compensable under the NICA Plan. In the absence of notice, the Plan does not apply. Given these provisions, we are led to conclude that an ALJ has jurisdiction to determine whether notice was given. As established law provides, an ALJ must have jurisdiction to determine whether the ALJ has *1257 jurisdiction. See, e.g., Sun Ins. Co. v. Boyd, 105 So.2d 574, 575 (Fla.1958) (explaining that "a tribunal always has jurisdiction to determine its own jurisdiction").
Notably, in 2003, the Legislature amended the NICA statute to add section 766.309(4), Florida Statutes:
If it is in the interest of judicial economy or if requested to by the claimant, the administrative law judge may bifurcate the proceeding addressing compensability and notice pursuant to s. 766.316 first, and addressing an award pursuant to s. 766.31, if any, in a separate proceeding. The administrative law judge may issue a final order on compensability and notice which is subject to appeal under s. 766.311, prior to issuance of an award pursuant to s. 766.31.
Ch. 03-416, § 77, at 4117, Laws of Fla. In passing the amendment, the Legislature implicitly acknowledged the existing case law indicating that an ALJ has jurisdiction to determine whether notice was provided pursuant to section 766.316. See generally, e.g., City of Hollywood v. Lombardi, 770 So.2d 1196, 1202 (Fla.2000) (explaining that the Legislature is presumed to know the judicial construction of a law when passing a new version of the law and to have adopted the prior judicial construction unless a contrary intent is expressed).
Other district courts of appeal had, before 2003, indicated that an ALJ has jurisdiction to determine whether the notice requirement was satisfied in a particular case. See O'Leary v. Fla. Birth-Related Neurological Injury Comp. Ass'n, 757 So.2d 624, 627 (Fla. 5th DCA 2000) ("The language used by the legislature in its amendment to the Act indicates that the administrative judge is to determine all matters relative to a claim. Notably, the determination of the adequacy of notice is not excluded from the duties of the administrative law judge.... [A]ny issue raising the immunity of a health provider, including the issue of whether the health provider satisfied the notice requirements of the Plan is an issue to be decided by the administrative law judge as one which relates to the question of whether the claim is compensable under the Plan."); Univ. of Miami v. M.A., 793 So.2d 999 (Fla. 3d DCA 2001) (adopting decision in O'Leary). See also Gugelmin v. Div. of Admin. Hearings, 815 So.2d 764 (Fla. 4th DCA 2002); Behan v. Fla. Birth-Related Neurological Injury Comp. Ass'n, 664 So.2d 1173 (Fla. 4th DCA 1995).
Appellant Tabb disagrees with these decisions and relies on language in section 766.309[2] as well as recent decisions of the *1258 Second District Court of Appeal. See All Children's Hosp., Inc. v. Dep't of Admin. Hearings, 863 So.2d 450, 456 (Fla. 2d DCA 2004) ("There is nothing in section 766.309 or elsewhere in NICA that gives the ALJ any responsibility or authority to determine either (a) that notice under section 766.316 was or was not properly given, or (b) that a provider is or is not entitled to invoke the immunity from tort liability provided for in section 766.303(2)."); Fla. Health Sciences Ctr., Inc. v. Div. of Admin. Hearings, 871 So.2d 1062, 1065 (Fla. 2d DCA 2004) ("No part of the NICA statute confers on the ALJ any authority to determine issues related to notice."). In its decisions, the Second District noted direct conflict with the three other district courts that have specifically ruled on this issue. See Fla. Health Sciences, 871 So.2d at 1066; All Children's Hosp., 863 So.2d at 457.
This court has not addressed the issue before but has indicated that a participating physician's failure to provide the required NICA notice under section 766.316 was not harmless. See Schur v. Fla. Birth-Related Neurological Injury Comp. Ass'n, 832 So.2d 188 (Fla. 1st DCA 2002). We now decide, in accord with decisions of the Third, Fourth, and Fifth Districts, that an ALJ has jurisdiction to determine whether the notice requirement was satisfied in a particular case. Appellant's preferred result would require a circuit court proceeding any time notice becomes an issue, contrary to the terms of the law. See § 766.301(1)(d), Fla. Stat. (2001) ("The issue of whether such claims are covered by this act must be determined exclusively in an administrative proceeding.").

B. Evidence of Routine Practice
On the merits of the case, Tabb argues that, assuming testimony indicated Memorial had a routine of providing NICA brochures at pre-registration, the ALJ erroneously applied a presumption that the NICA brochure was delivered to her. Tabb argues, "If Memorial had instituted a routine of providing NICA brochures to its patients at the pre-registration (which is denied), such practice should constitute a circumstantial inference that Clarice Tabb may have received the brochure, not a presumption that she did in fact receive the brochure." We agree.
In applying a presumption that Memorial had given Tabb a NICA brochure at her pre-registration, the ALJ relied on Watson v. Freeman Decorating Co., 455 So.2d 1097 (Fla. 1st DCA 1984). As Tabb points out, however, the Watson case involved the mailing and receipt of a letter:
A hospital representative testified that the billing code indicated the statement was mailed in the ordinary course of business. The record reflects the statement is dated October 10, 1981, which places it within the ten-day statutory reporting period. There is a general presumption that the ordinary course of business has been followed, absent a showing to the contrary.
455 So.2d at 1099. As Tabb further points out, in Watson, unlike the situation here, no evidence was offered to show the ordinary practice was not followed.
In this case, the ALJ's use of the language "no compelling proof to the contrary" compels us to conclude that he determined *1259 Memorial's evidence entitled Memorial to a rebuttable presumption, thereby shifting the burden of proof to Tabb to prove the contrary. See §§ 90.301, .302, Fla. Stat. (2001).[3] Evidence of Memorial's routine of including a NICA brochure in each pre-registration packet is admissible to prove that Tabb received the brochure when she pre-registered. See § 90.406, Fla. Stat. (2001) ("Evidence of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is admissible to prove that the conduct of the organization on a particular occasion was in conformity with the routine practice."); see also, e.g., Singer Housing v. Wren, 390 So.2d 428, 430 (Fla. 1st DCA 1980) (finding evidence concerning defendant's past acts admissible as past trade or business practices). Nothing in the evidence code or case law, however, indicates that such evidence creates a presumption that Tabb received the brochure. Instead, the ALJ should have weighed and considered the evidence as any other type of evidence. See Lumbermens Mut. Cas. Co. v. Alvarez, 443 So.2d 279 (Fla. 3d DCA 1983).
In Lumbermens, the court explained the effect of section 90.406 and also explained that the evidence of a routine practice did not establish a presumption but, instead, would support only an inference that the practice was followed in the case:
The impact of Section 90.406 on the case at hand is that [the defendant's] testimony as to the routine practice of the insurance agency is not to be disregarded, as it was below, merely because it is uncorroborated and indeed is contradicted by [the plaintiff's] "eyewitness" denial; instead, [the defendant's] testimony is to be weighed and considered by the trier of fact as any other type of evidence. [The plaintiff's] direct proof is not superior, as a matter of law, to [the defendant's] circumstantial proof. While concededly [the defendant's] testimony as to the routine practice establishes no presumption that it was followed in a particular instance, it is nonetheless sufficient to support an inference by the trier of fact that the practice was followed on the particular occasion in question, notwithstanding that [the plaintiff's] testimony directly contradicts such an inference.
Id. at 281. Similarly, in this case, testimony presented by Memorial does not establish a presumption that the routine of distributing the NICA brochure was followed in this case; rather, such evidence will support only an inference by the ALJ that *1260 the practice was followed when Tabb pre-registered.
Moreover, the ALJ's use of a presumption in this case is at odds with the clear language of the statute. The NICA statute tells health care providers exactly what they need to do to avail themselves of a rebuttable presumption that the notice requirements have been satisfied: "Signature of the patient acknowledging receipt of the notice form raises a rebuttable presumption that the notice requirements of this section have been met." § 766.316, Fla. Stat. (2001). Here, even though Memorial did not document the alleged act of providing notice to Tabb, the ALJ nevertheless gave Memorial the benefit of a rebuttable presumption. This construction renders the statute superfluous and contravenes accepted statutory construction doctrine. See, e.g., Hechtman v. Nations Title Ins. of N.Y., 840 So.2d 993, 996 (Fla.2003) ("It is an elementary principle of statutory construction that significance and effect must be given to every word, phrase, sentence, and part of the statute if possible, and words in a statute should not be construed as mere surplusage."); State v. Goode, 830 So.2d 817, 824 (Fla.2002) ("[A] basic rule of statutory construction provides that the Legislature does not intend to enact useless provisions, and courts should avoid readings that would render part of a statute meaningless.")
Memorial urges that any error by the ALJ in applying a presumption is harmless because Tabb, not Memorial, actually had the burden of proving whether notice was given. The ALJ, however, properly found that "[a]s the proponent of the issue, the burden rested on the health care providers to demonstrate, more likely than not, that the notice provisions of the Plan were satisfied." See Galen, 696 So.2d at 311 ("[T]he assertion of NICA exclusivity is an affirmative defense."). Because the ALJ then shifted the burden to Tabb to prove the contrary, however, the error cannot be characterized as harmless.

III. Conclusion
The ALJ had subject matter jurisdiction to determine whether Tabb received notice but erroneously applied a presumption on that issue. On remand, the ALJ, affording Memorial's evidence the proper weight, should make a new determination on the question of notice.
REVERSED and REMANDED for further proceedings.
WOLF, C.J., and LEWIS, JJ., CONCUR.
NOTES
[1] Section 766.316, Florida Statutes (2001), provides:

Notice to obstetrical patients of participation in the plan.Each hospital with a participating physician on its staff and each participating physician, other than residents, assistant residents, and interns deemed to be participating physicians under s. 766.314(4)(c), under the Florida Birth-Related Neurological Injury Compensation Plan shall provide notice to the obstetrical patients as to the limited no-fault alternative for birth-related neurological injuries. Such notice shall be provided on forms furnished by the association and shall include a clear and concise explanation of a patient's rights and limitations under the plan. The hospital or the participating physician may elect to have the patient sign a form acknowledging receipt of the notice form. Signature of the patient acknowledging receipt of the notice form raises a rebuttable presumption that the notice requirements of this section have been met. Notice need not be given to a patient when the patient has an emergency medical condition as defined in s. 395.002(9)(b) or when notice is not practicable.
[2] 766.309 Determination of claims; presumption; findings of administrative law judge binding on participants.

(1) The administrative law judge shall make the following determinations based upon all available evidence:
(a) Whether the injury claimed is a birth-related neurological injury. If the claimant has demonstrated, to the satisfaction of the administrative law judge, that the infant has sustained a brain or spinal cord injury caused by oxygen deprivation or mechanical injury and that the infant was thereby rendered permanently and substantially mentally and physically impaired, a rebuttable presumption shall arise that the injury is a birth-related neurological injury as defined in s. 766.302(2).
(b) Whether obstetrical services were delivered by a participating physician in the course of labor, delivery, or resuscitation in the immediate postdelivery period in a hospital; or by a certified nurse midwife in a teaching hospital supervised by a participating physician in the course of labor, delivery, or resuscitation in the immediate postdelivery period in a hospital.
(c) How much compensation, if any, is awardable pursuant to s. 766.31.
(2) If the administrative law judge determines that the injury alleged is not a birth-related neurological injury or that obstetrical services were not delivered by a participating physician at the birth, she or he shall enter an order and shall cause a copy of such order to be sent immediately to the parties by registered or certified mail.
(3) By becoming a participating physician, a physician shall be bound for all purposes by the finding of the administrative law judge or any appeal therefrom with respect to whether such injury is a birth-related neurological injury.
[3] 90.301 Presumption defined; inferences.

(1) For the purposes of this chapter, a presumption is an assumption of fact which the law makes from the existence of another fact or group of facts found or otherwise established.
(2) Except for presumptions that are conclusive under the law from which they arise, a presumption is rebuttable.
(3) Nothing in this chapter shall prevent the drawing of an inference that is appropriate.
(4) Sections 90.301-90.304 are applicable only in civil actions or proceedings.
90.302 Classification of rebuttable presumptions.
Every rebuttable presumption is either:
(1) A presumption affecting the burden of producing evidence and requiring the trier of fact to assume the existence of the presumed fact, unless credible evidence sufficient to sustain a finding of the nonexistence of the presumed fact is introduced, in which event, the existence or nonexistence of the presumed fact shall be determined from the evidence without regard to the presumption; or
(2) A presumption affecting the burden of proof that imposes upon the party against whom it operates the burden of proof concerning the nonexistence of the presumed fact.