815 So.2d 764 (2002)
Mauricio GUGELMIN and Stella Gugelmin, and Mauricio Gugelmin, individually, and as agent and Personal Representative of the Estate of Giuliano Gugelmin, deceased and Stella Gugelmin, individually, Appellants,
v.
DIVISION OF ADMINISTRATIVE HEARINGS, Florida Birth Related Neurological Injury Compensation Association and South Broward Hospital District d/b/a Memorial Hospital West, Appellees.
No. 4D00-3874.
District Court of Appeal of Florida, Fourth District.
May 8, 2002.
Ben J. Weaver of Weaver & Weaver, P.A., Fort Lauderdale, and Bryan Scott Henry, P.A., Weston, for appellants.
*765 Arthur J. England, Jr. and Paul C. Savage, Greenberg Traurig, P.A., Miami, for Appellee Florida Birth Related Neurological Injury Compensation Association, and Nancy W. Gregoire and George E. Bunnell of Bunnell, Woulfe, Kirschbaum, Keller, McIntye & Gregoire, P.A., Fort Lauderdale, for Appellee-South Broward Hospital District d/b/a Memorial Hospital West.
TAYLOR, J.
In 1997, appellants, Mauricio and Stella Gugelmin, filed a medical malpractice suit against appellee/cross-appellant South Broward Hospital District d/b/a Memorial Hospital West ("the hospital") and against Dr. Eric Freling and his professional association for damages resulting from the delivery of their twin son, Giuliano, on July 14, 1994. In June 1999, Dr. Freling tendered his policy limits of $250,000 to appellants in exchange for a release allowing appellants to pursue administrative remedies.
Thereafter, appellants filed an administrative petition with the Division of Administration Hearings (DOAH) for benefits under Florida's Birth Related Neurological Injury Compensation Plan ("the Plan").[1] In response, appellee Neurological Injury Compensation Association ("NICA"), which administers this program, moved to dismiss appellants' petition, based on the statute's exclusivity of remedy provisions. NICA argued that appellants' settlement with Dr. Freling precluded pursuit of their claim under the Plan. The administrative law judge (ALJ) denied the motion to dismiss without prejudice.
NICA then filed a Notice of Acceptance of Compensability, agreeing that the child had suffered a birth-related injury, as defined in the statute, but reasserting its position that appellants could not receive NICA benefits in light of their settlement with Dr. Freling in the medical malpractice suit. The hospital was granted leave to intervene in the administrative proceedings to defend its position.
On June 12, 2000, DOAH held a final administrative hearing to determine two issues: (1) whether appellants' child qualified for NICA coverage; and, if so (2) whether the notice requirements of the statute were satisfied. The ALJ entered a final order finding that: (1) appellants were eligible for NICA benefits;[2] and (2) Dr. Freling failed to give the required pre-delivery notice of his participation in the NICA Plan. At the same time, the ALJ determined that the hospital did give notice to Mrs. Gugelmin soon after her admission to the hospital. Pursuant to the parties' stipulation, the ALJ also found that because the settlement with Dr. Freling was tentative, it did not impact on Plan compensability.
*766 In this appeal, appellants do not contest the ALJ's factual determinations regarding compensability and notice. Rather, they challenge that portion of the order discussing the Plan's exclusive remedies and concluding that appellants must elect between NICA benefits and a civil recovery in their medical malpractice lawsuit. Appellants argue that the ALJ had authority to determine only whether their claim was compensable. They contend the ALJ exceeded his jurisdiction by ruling on the "effect" of his compensability findings on their common law rights. Accordingly, appellants seek reversal of the final order's requirement that they make an election between remedies and that they do so before obtaining discovery on NICA's estimate of the value of their claim.[3]
Section 766.309, Florida Statutes (1999) lists the three evidentiary issues that an administrative law judge is authorized to determine:
(1) whether the injury claimed is a birth related neurological injury;
(2) whether the obstetrical services were delivered by a participating physician during the course of labor, delivery, or resuscitation, and
(3) the amount of compensation, if any, awardable under the statute.
Appellants argue that because the NICA statute is a statutory substitute for common law tort rights, it must be strictly construed. They maintain that if there is no clear indication in the legislative scheme that the ALJ has responsibility for making determinations on the legal consequences of its entitlement findings, then the ALJ lacks such authority. According to appellants, such decisions can be made only by a circuit court judge.
Appellees respond that the ALJ did not exceed his authority in deciding the consequences of appellants' acceptance of Plan benefits on their right to obtain a civil recovery in their medical malpractice action. Arguing that the ALJ did nothing more than recite the applicable law, appellees cite section 766.304, Florida Statutes (1999), which provides:
If the administrative law judge determines that the claimant is entitled to compensation from the association, no civil action may be brought or continued in violation of the exclusiveness of remedy provision of s. 766.303.
Section 766.303(2), Florida Statutes (1999), provides:
The rights and remedies granted by this plan shall exclude all other rights and remedies ... at common law or otherwise, against any person or entity....
Appellees contend that, consistent with the above sections, the ALJ first determined that appellants qualified for compensation under the Plan and then correctly applied the law in deciding that appellants' acceptance of Plan benefits would preclude them from bringing or continuing any civil action.
Appellees further argue that appellants, having obtained the relief they sought from the ALJ, are not adversely affected by the ALJ's correct statements of the law. As section 120.68(1), Florida Statutes *767 (2000), limits the right of appeal from final agency action only to a party "adversely affected" by final agency action, appellees urge dismissal of this appeal. They contend that appellants are requesting a purely advisory opinion on an issue not dispositive of the proceeding below. See Fla. Comm'n on Hurricane Loss Projection Methodology v. State Dep't of Ins., 716 So.2d 345 (Fla. 1st DCA 1998)(holding that the appellate court lacked jurisdiction to render an advisory opinion on whether a nondispositive passage in a favorable recommended order correctly stated the law).
Indeed, even appellants themselves suggest that the final order's discussion on election of remedies is obiter dictum and should not be binding upon the circuit court. Yet, they urge reversal of the final order, "in an abundance of caution," for fear that the circuit court will consider the ALJ's election-of-remedies determination controlling on these issues.
Under section 120.68(7), Florida Statutes (1999), we are authorized to set aside or modify final agency action, such as the final order at issue here, if we find that the agency erroneously interpreted the Plan or the agency exercised discretion outside the range of discretion delegated to it by law. Appellants argue that the ALJ exceeded his authority by concluding in his final order that their acceptance of Plan benefits would prohibit them from pursuing their civil action.[4]
While section 766.304 grants exclusive jurisdiction to the ALJ to determine whether a claim is compensable under the Plan, there is nothing in this statutory scheme that gives the ALJ authority to determine the impact of its compensability findings upon a claimant's common law rights and remedies. In O'Leary v. Florida Birth-Related Neurological Injury Compensation Ass'n, 757 So.2d 624, 627-28 (Fla. 5th DCA 2000), the fifth district explained that the legislature, by amending section 766.304, expressed its clear intent that the administrative law judge is to "determine all matters relative to a claim." Id. at 626. We interpret that to mean all matters relative to a claim's compensability.
We recognize, of course, that the issue of exclusivity of the NICA remedy is closely tied to a claim's compensability under the Plan. This is so because the statute expressly precludes any civil action once the ALJ determines that a claim is compensable. Yet, while an ALJ may properly comment upon applicable law in the final order, once an ALJ has decided all matters relative to a claim's compensability, his or her statutory duties and responsibilities are discharged. Thereafter, decisions regarding a claimant's election of remedies ultimately reside with the circuit court.
In this case, the final order goes beyond simply determining compensability of the claim. After setting forth findings that the claim is compensable and discussing the statute's exclusivity of remedy provisions, the order determines that appellants must make an election between remedies and directs them to choose either to accept NICA compensation or reject it and continue with their civil action against Dr. Freling and the hospital. We agree with appellants that the ALJ exceeded his authority in making such determinations in his final order.
On cross-appeal, the hospital also argues that the ALJ erred in making determinations beyond its findings of compensability *768 and non-notification. The hospital acknowledges the ALJ's authority to decide factual issues of notice, as permitted by O'Leary, 757 So.2d at 627-28, but asserts that the effect of such factual determinations was for the circuit court to decide.[5]
The hospital's main argument, however, is that the ALJ erroneously interpreted the Plan. Like appellants, the hospital does not dispute the administrative law judge's findings regarding appellant's eligibility for NICA benefits or Dr. Freling's failure to provide appellants notice of his participation in NICA. Instead, it challenges the ALJ's ruling regarding its right to rely on the Plan's exclusivity of remedies. The hospital argues that the ALJ erred in concluding that, despite the hospital's participation in NICA and timely notice to appellants, Dr. Freling's failure to comply with notice provisions bars not only his right to immunity from civil suit but the hospital's right to immunity as well. The ALJ determined that because the obstetrician failed to give timely notice of his participation in NICA, appellants have the option of accepting compensation under the Plan or pursuing a civil action against the hospital.
We agree that the ALJ misinterpreted the Plan in holding that appellants were free to pursue the hospital in a civil action because of Dr. Freling's failure to give notice. The undisputed facts show that appellants qualified for compensation under the Plan, that Dr. Freling was a participating physician under the Plan, and that the hospital gave timely notice under the Plan. Once those statutory requirements were met, the hospital was entitled to the Plan's protection.
In sum, we conclude that the ALJ exceeded his authority to determine compensability and notice issues by ruling on the impact of such determinations on appellants' and the cross-appellant/hospital's rights and remedies. Further, the ALJ misinterpreted the Plan as to the hospital's claim of statutory immunity. We reverse the final order only insofar as it contains rulings that extend beyond its compensability and notice findings, i.e., requiring appellants to elect between remedies and denying the hospital statutory immunity despite its timely notice under the Plan. We remand with instructions to the ALJ to modify the final order by deleting these rulings. In all other respects, the final order is affirmed.
AFFIRMED in part, REVERSED in part, and REMANDED.
STEVENSON, J., and OWEN, WILLIAM C., JR., Senior Judges, concur.
NOTES
[1] The Plan is set forth in sections 766.301.316, Florida Statutes (1999), and "provides a no fault and exclusive remedy for birth-related neurological injures when the medical service providers elect to participate in the Plan." O'Leary v. Fla. Birth-Related Neurological Injury Comp. Ass'n, 757 So.2d 624, 625 (Fla. 5th DCA 2000).
[2] The parties stipulated that: (1) the child was born a live infant on July 14, 1994 at South Broward Hospital District's Memorial Hospital, with a birth weight in excess of 2500 grams; (2) Dr. Freling provided the obstetrical services during the child's birth and was a "participating physician" in the Plan; (3) the coverage afforded by the plan is for infants who have suffered a "birth-related neurological injury," which is defined as an "injury to the brain ... caused by oxygen deprivation or mechanical injury occurring in the course of labor, delivery or resuscitation in the immediate post-delivery period in a hospital, which renders the infant permanently and substantially mentally and physically impaired," and (4) the child suffered a "birth-related neurological injury," as defined.
[3] The order states that appellants' election to proceed with their common law remedies must be evidenced "prior to and in lieu of payment of an award under ss. 766.301-766.316," and that such election must be made "before the award of the division becomes conclusive and binding as provided for in s. 766.311."

In a companion order, the ALJ noted his lack of authority over NICA in the civil action to compel discovery and suggested that appellants obtain expert advice on the value of their claim.
[4] Including, presumably, acceptance and circuit court approval of Dr. Freling's pending $250,000 settlement.
[5] In its initial brief on cross-appeal, the hospital states that the ALJ departed from his position announced at a pre-hearing conference that he would decide the factual issue of notice, as directed by O'Leary, but that he would leave a decision on the impact of his finding to the circuit court.