THOMPSON, Judge.
On August 9, 2001, T.T.W. (“the father”) filed a dependency petition in which he alleged, among other things, that D.Q.A. (“the child”) had lived with him since the child was nine months old; that V.A. (“the mother”) had dropped the child off at the father’s workplace; and that the mother had told the father that he could keep the child. The trial court granted the father temporary custody of the child on August 9, 2001.
On August 16, 2001, the mother answered and filed a counterpetition in which she sought primary physical custody of the child. On November 2, 2001, the mother filed a motion to dismiss the father’s petition; the trial court granted the mother’s motion to dismiss on November 5, 2001, and restored physical custody of the child to the mother. On November 7, 2001, the trial court rescinded its November 5, 2001, order and ordered the father to submit to genetic testing. The child remained in the temporary custody of the father.
The trial court held a hearing on February 7, 2002, after which it reserved judgment on the issue of dependency; at that time the parties stipulated that the father was the biological father of the child. The trial court ordered home evaluations on the mother and the father. On April 29, 2002, the mother filed a motion for a final hearing. Prior to the final hearing, the mother filed a motion for summer visitation with the child, which was subsequently granted. The trial court held a final hearing on July 24, 2002, after which it determined the child to be dependent. On *447 July 27, 2002, the trial court entered a judgment awarding custody of the child to the mother. The father filed a post-judgment motion on August 12, 2002; the trial court denied the motion on August 14, 2002. The father appealed.
Andrea Martin, a court reporter, prepared the transcript on appeal from audiotapes of the proceedings. On January 23, 2003, the trial court certified the record as complete and accurate pursuant to Rule 28(A)(1)(a), Ala. R. Juv. P. On February 7, 2003, the father filed a motion to withdraw the trial court’s certification of the record; following a hearing on March 7, 2003, the trial court denied the father’s motion on March 21, 2003.
The record indicates that at the time of the hearings in this matter the mother and the father were both 29 years old. When the mother was 18 years old, she met the father and began a one-year romantic relationship with him from which the child was born. The child was nine years old at the time of the hearing in this matter. The mother and father never married, and they eventually ended the relationship.
When the child was nine months old, the father testified, the mother left the child with him at the father’s place of employment. According to the father, he raised the child, placed the child in Penny’s Day Care beginning for a period of two years when the child was four years old, and, thereafter, enrolled the child at Abbeville Elementary School. The child struggled academically in school; the child failed the second grade during the 2001-02 school year. The child also had numerous absences from school. The following school year, the child repeated the second grade at Fort Gaines Elementary School in Georgia. The father testified that he removed the child from Abbeville Elementary because the child was having trouble in school. While in the second grade at Fort Gaines Elementary, the child initially earned failing grades in six of his subjects, but he earned average final grades.
The father testified that he works as a beautician in a beauty salon in Eufaula, Alabama; the father earns approximately $1,100 per month. The father’s immediate family resides in Fort Gaines, Georgia; at the time of the trial, the father resided in Fort Gaines with his maternal grandmother, G.J., while his mobile home was being repaired following a fire. The father testified that he generally works late hours but that G. J. takes care of the child when he is unable to take care of him. Testimony revealed that G.J. is in poor health. Before the father moved to Fort Gaines, L.M.W., the father’s paternal grandmother, helped raise the child. L.M.W. testified that she took care of the child because the father worked late hours. The father stated that the mother took the child to the doctor when necessary and that she took the child to get his required immunizations. The father testified that the mother was a “good mother.”
The father testified that he filed the dependency petition in an effort to gain custody of the child. However, the dispute before the trial court was in the nature of a custody dispute rather than a dependency action. See S.G. v. P.C., 853 So.2d 246 (Ala.Civ.App.2002)(holding that the dispute in that case was a custody dispute and not a dependency action); B.S.L. v. S.E., 826 So.2d 890 (Ala.Civ.App.2002)(finding the action to be in the nature of a custody dispute rather than a dependency action).
The father acknowledged that he did not have legal custody of the child while the child was in his care, but he testified that he had cared for the child since the child was nine months old. The father stated that he never claimed the child for tax purposes but that the mother claimed the child for a tax credit. According to the *448 father, he received one $800 payment in 2001 from the mother after asking for a portion of her income-tax refund. The mother testified that she gave the money to the father to purchase a trampoline for the child. The mother further testified that she did not pay the father child support because the parties shared custody of the child; the mother stated that the child spent 50% of his time with her.
The father testified that he does not own a vehicle and that his driver’s license was suspended for excessive speeding violations. The father has another child from a previous relationship; the father does not have custody of that child. The father is single, in good health, and has no arrest record. Derek Sauls, a caseworker with the Department of Human Resources (“DHR”), conducted a home evaluation on the father at the trial court’s request. At the time the home evaluation was conducted, the father was living with G.J. in Fort Gaines. In his report, Sauls concluded that the father’s home was an adequate placement for the child.
The mother denied dropping the child off at the father’s place of employment when the child was nine months old. According to the mother, she left the child with the father when the child was three years old and she was pregnant with her second child. The mother testified that at the time she left the child with the father she was going into the hospital for one week and needed the father to care for the child. The mother testified that the parties reached an oral agreement whereby the child would stay with the father during the week and the mother would get the child on the weekends, holidays, and during the summer. The mother testified that the informal arrangement gave the parties equal time with the child.
The mother testified that she grew concerned about the child when the child failed the second grade at Abbeville Elementary. The mother testified that she enrolled the child in an elementary school in Eufaula after the father failed to enroll the child in school in Fort Gaines before the start of the next school year. According to the mother, the child was not in school when she picked him up in Fort Gaines even though school was in session.
The mother is employed as a certified nursing assistant and earns approximately $980 per month. In addition to her employment income, the mother receives $317 per month in food-stamp benefits. The mother works an average of 30 hours per week. The mother has medical insurance through her employer, and the child is insured under Alabama Medicaid. The mother has custody of one child from another relationship; that child was six years old at the time of the hearing. The mother testified that the children had bonded. The mother is in good health and has no prior arrest record. The mother stated that she does not smoke, drink, or use illegal drugs. According to the mother, the father smokes marijuana.
Rebecca Roberson, a caseworker with DHR, conducted a home evaluation on the mother at the trial court’s request. At the time the home evaluation was conducted, the mother lived with her grandmother. Roberson noted that the grandmother’s house was adequate, well-furnished, and in a safe neighborhood. Roberson concluded in her report that there was insufficient evidence to indicate that the mother was unfit to parent the child or that the home environment was inadequate.
According to the mother, she should have primary physical custody of the child because she would be a better caregiver to the child. The mother testified that she could offer the child a stable environment and could better supervise the child than the father. The mother further testified *449 that she and the child regularly attend church together and that they had recently gone to Disney World on a family vacation. Lula Holt, the mother’s aunt, testified that she always accompanied the mother when the mother picked the child up for visitation. Holt testified that when the child was picked up the father was rarely with the child.
On appeal, the father argues that the trial court erred in awarding the mother primary physical custody of the child. The determination of an award of custody is within the sound discretion of the trial court. Pierce v. Helka, 634 So.2d 1031, 1032 (Ala.Civ.App.1994). A trial court’s custody determination following the presentation of ore tenus evidence is presumed correct and that judgment will not be set aside on appeal absent a finding that the trial court abused its discretion or that its determination is so unsupported by the evidence as to be plainly and palpably wrong. Pierce v. Helka, supra.
When the trial court makes an initial custody determination, neither party is entitled to a presumption in his or her favor, and the “best-interest-of-the-child” standard will generally apply. Nye v. Nye, 785 So.2d 1147 (Ala.Civ.App.2000); see also Ex parte Byars, 794 So.2d 345 (Ala.2001). In the instant case, the parties had shared joint physical custody of the child. The informal custody arrangement reached by the mother and the father did not prefer either parent with regard to physical custody.
When there is a prior custody judgment, the party seeking a change in custody must meet the standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984); however, if custody has not previously been determined, then the appropriate standard to apply is “the best interest of the children.” Ex parte Couch, 521 So.2d 987, 989 (Ala.1988). See also Ex parte Johnson, 673 So.2d 410, 413 (Ala.1994) (“[I]f neither parent has previously been given primary physical custody, then the ‘best interests of 'the child’ standard ■ applies.”); Fitzhugh v. Fitzhugh, 634 So.2d 565 (Ala.Civ.App.1994) (where there was no judicial determination favoring one parent regarding physical custody, the best-interests standard applied); Mardis v. Mardis, 660 So.2d 597 (Ala.Civ.App.1995) (because there was no prior determination regarding physical custody, the best-interests standard applied).
A trial court may consider, in making an initial award of custody based on the best interests of the child, factors such as the “ ‘characteristics of those seeking custody, including age, character, stability, mental and physical health ... [and] the interpersonal relationship between [the] child and [the] parent.’ ” Graham v. Graham, 640 So.2d 963, 964 (Ala.Civ.App.1994) (quoting Ex parte Devine, 398 So.2d 686, 696-97 (Ala.1981)). Furthermore, the trial court considers such factors as “ ‘the children’s age and sex and each parent’s ability to provide for the children’s educational, material, moral, and social needs.’ ” M.S.H. v. C.A.H., 829 So.2d 164, 168 (Ala.Civ.App.2002) (quoting Tims v. Tims, 519 So.2d 558 (Ala.Civ.App.1987)).
It is clear that both parents love the child and want to have custody of the child. However, it is also clear that the interests of the child would best be served by his being in the primary physical custody of one parent. The mother works during the day as a certified nursing assistant; the mother averages 30 hours of work per week. The mother is responsible for the child’s health care. While in the custody of the mother, the child participates in scheduled activities such as church and goes on family vacations. Also, the child *450 shares a close relationship to his half-brother.
The father works as a beautician and works late hours. While at work, the father places the child in the care of the child’s paternal great-grandmother and other family members. Evidence indicates that the child had suffered academically while in the custody of the father during the school year but that his grades later improved.
The mother and the father each live in their respective grandparents’ home; each have limited means of support. However, both the mother and the father are surrounded by supportive family members. Given the facts of this case, either parent would have been a viable choice as the primary physical custodian for the child. Therefore, we cannot say that the trial court erred in awarding primary physical custody of the child to the mother. See M.S.H. v. C.A.H., supra.
The father also argues on appeal that the trial court erred by denying his motion to withdraw its certification of the record as adequate. Specifically, the father contends that the record was replete with “unintelligible” portions of testimony, including statements made by the witnesses, the trial judge, and the attorneys.
At the March 7, 2003, hearing, the trial court took the testimony of Andrea Martin, the court reporter who transcribed the audiotapes made during the February 7, and July 24, 2002, hearings in this matter. Martin testified that she counted 217 points in the record during which the testimony was inaudible. Our supreme court has held that “such omissions from the record do not make the record inadequate for appellate review.” A.V. v. Morgan County Dep’t of Human Res., 623 So.2d 331, 332 (Ala.Civ.App.1993)(citing Dobbs v. State Dep’t of Pensions & Sec., 484 So.2d 1052 (Ala.1984)).
We have reviewed the record on appeal and find the record adequate for review by this court. Contrary to the father’s assertions on appeal, the record is sufficient and complete for purposes of appellate review. Therefore, the trial court did not err in certifying the record for appeal pursuant to Rule 28(A), Ala. R. Juv. P.
The judgment of the trial court awarding custody of the child to the mother and certifying the record as adequate is due to be affirmed.
AFFIRMED.
YATES, P.J., and CRAWLEY and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result.