BELL, J.
In this consolidated case, we review two decisions of the Second District Court of Appeal: All Children’s Hospital, Inc. v. Department of Administrative Hearings, 868 So.2d 450 (Fla. 2d DCA 2004), and Florida Birth-Related Neurological Injury Compensation Ass’n v. Ferguson, 869 So.2d 686 (Fla. 2d DCA 2004). In each case, the Second District certified conflict with decisions from the Third, Fourth, and Fifth District Courts of Appeal on an issue regarding the subject matter jurisdiction of administrative law judges under the Florida Birth-Related Neurological Injury Compensation Act as found in sections 766.301 through 766.316, Florida Statutes (1997 & Supp.1998) (NICA). See Univ. of Miami v. M.A., 793 So.2d 999 (Fla. 3d DCA 2001); Gugelmin v. Div. of Admin. Hearings, 815 So.2d 764 (Fla. 4th DCA 2002); Behan v. Fla. Birth-Related Neurological Injury Comp. Ass’n, 664 So.2d 1173 (Fla. 4th DCA 1995); O’Leary v. Fla. Birth-Related Neurological Injury Comp. Ass’n, 757 So.2d 624 (Fla. 5th DCA 2000).[1]
We frame the question in conflict as follows:
Does an administrative law judge (ALJ), when considering a NICA claim, have jurisdiction to determine whether or not a health care provider has complied with the “notice to obstetrical patients of participation in the plan” as required by section 766.316?
In the two cases before us, the Second District held that the NICA statute, as it existed prior to the 2003 amendment, did not give the ALJ any jurisdiction to determine this notice issue.[2] The Third, Fourth, and Fifth Districts had reached the opposite conclusion; and, subsequent to the Second District’s certification of conflict, the First District issued an opinion aligning itself with the Third, Fourth, and Fifth Districts. See Tabb v. Fla. Birth-Related Neurological Injury Comp. Ass’n, 880 So.2d 1253 (Fla. 1st DCA 2004).
As explained below, we hold that when notice is raised as part of a claim filed under NICA, an ALJ has jurisdiction to make findings regarding whether a health care provider has satisfied the “notice to obstetrical patients” requirement of section 766.316, Florida Statutes (Supp.1998). In light of this holding, we quash the Second District’s decision in All Children’s Hospital, Inc. and remand that case for further proceedings consistent with this opinion. However, because the conflict question has become moot in Ferguson, we dismiss that case.
I. FACTUAL AND PROCEDURAL BACKGROUND
As stated, we have before us two decisions from the Second District. In All Children’s Hospital, Inc., Christopher Glenn and Anna Glenn, now Anna Lentini, *708 filed a civil suit in circuit court against All Children’s Hospital, Inc. (All Children’s) alleging that the medical malpractice of All Children’s neonatal nurses caused injuries to their newborn infant. 863 So.2d at 452.[3] In Ferguson, Maria and Garry Ferguson brought a similar suit in circuit court against Morton Plant Mease Health Care Hospital (Morton Plant) and nurse Lenore V. McCall, the certified nurse midwife, alleging medical malpractice in the delivery of their infant. 869 So.2d at 687.
The relevant facts of each case are essentially the same. In each case, the infant’s parents filed a medical malpractice suit against the health care provider who assisted in the delivery of the infant.[4] The defending health care provider responded by raising the affirmative defense that the civil suit was brought in violation of NICA’s exclusive remedy provision, section 766.303(2), Florida Statutes (1997). In each case, the respective circuit court abated the medical malpractice action and ordered the parents to file a claim for compensation under the injury compensation plan established by section 766.303, Florida Statutes (the NICA Plan). Claims under the NICA Plan are heard and determined administratively as set forth in sections 766.301-.316.
In each case, the parents complied with the circuit court’s order but did so under protest. They filed NICA claims but alleged that the health care providers had not provided them with the notice required by section 766.316, Florida Statutes (Supp. 1998). This statutorily mandated notice informs obstetrical patients of “the limited no-fault alternative for birth-related injuries” under the NICA Plan. Specifically, section 766.316, entitled “Notice to obstetrical patients of participation in the plan,” provides:
Each hospital with a participating physician on its staff and each participating physician, other than residents, assistant residents, and interns deemed to be participating physicians under s. 766.314(4)(c), under the Florida Birth-Related Neurological Injury Compensation Plan shall provide notice to the obstetrical patients as to the limited no-fault alternative for birth-related neurological injuries. Such notice shall be provided on forms furnished by the association and shall include a clear and concise explanation of a patient’s rights and limitations under the plan. The hospital or the participating physician may elect to have the patient sign a form acknowledging receipt of the notice form. Signature of the patient acknowledging receipt of the notice form raises a rebuttable presumption that the notice requirements of this section have been met. Notice need not be given to a patient when the patient has an emergency medical condition as defined in s. 395.002(8)(b) or when notice is not practicable.
If a health care provider complies with this notice provision, according to section 766.303, compensation under the plan is the exclusive remedy for the covered injuries. Therefore, in light of this allegation by the parents that the statutory notice was not provided, the health care provid *709 ers were allowed to intervene in the administrative proceedings.
After an administrative hearing in each case, the ALJ found that the required notice was not provided. Given this finding, the ALJ then ordered the parents to elect their remedy — either waive the notice issue and pursue an award under NICA or pursue the medical malpractice action in circuit court. In both cases, the health care providers appealed the ALJ’s order to the Second District Court of Appeal. The Second District reversed the ALJ’s orders because it determined that NICA did not give the ALJ jurisdiction to make findings regarding notice.
The procedural history of the two cases varied on appeal. All Children’s Hospital, Inc. was the first case decided by the Second District. 863 So.2d 450. All Children’s sought to challenge the substance of the ALJ’s findings regarding notice. The Second District never reached this substantive claim. Instead, as stated above, it held that NICA does not give an ALJ jurisdiction to make findings regarding notice. Specifically, the Second District wrote:
On appeal, All Children’s contends the ALJ erred in determining that its immunity from suit under NICA was dependent on notice from both the mother’s obstetrician and Bayfront. We decline to reach that issue, because we conclude that, under the governing statutory language, the ALJ’s jurisdiction was restricted to determining whether the claim was covered by NICA and did not extend to the issue of whether a provider is entitled to invoke the exclusive remedy provision of the statute.
All Children’s Hosp., Inc., 863 So.2d at 454.
Ferguson was decided next by the Second District. 869 So.2d 686. In Ferguson, the Florida Birth-Related Neurological Injury Compensation Association (the Association)[5] and Morton Plant appealed the ALJ’s order. Before oral argument, the Fergusons and Morton Plant notified the Association arid the Second District that they had entered into a settlement agreement. The case proceeded, however,[6] and in accord with All Children’s Hospital Inc., the Second District again held that the ALJ did not have jurisdiction to make findings regarding notice. Id. at 688-89.
The Association requested that this Court review the decisions of the Second District and resolve the certified conflict.
II. ANALYSIS
Again, the issue in conflict is whether an ALJ, when considering a NICA claim, has jurisdiction to ’determine if a health care provider has complied with the “notice to obstetrical patients” required by section 766.316. Because resolving this conflict requires the interpretation of a statute, our standard of review is de *710 novo. B.Y. v. Dep’t of Children & Families, 887 So.2d 1253, 1255 (Fla.2004). As previously stated, we conclude that when a health care provider’s compliance with the notice requirement of section 766.316 is raised as an issue in a NICA claim, an ALJ has jurisdiction to make this determination.
To resolve the conflict question, we will (1) contextualize the certified conflict by briefly outlining the purpose, structure, and relevant provisions of NICA as they existed in 1998; (2) summarize the analytical basis for the conflict between the district courts of appeal; and (3) set forth the statutory analysis we find most appropriate. We do this in the context of All Children’s Hospital, Inc. because Ferguson is moot.
A. Ferguson
The issue raised in Ferguson is now moot; therefore, we dismiss the Association’s petition for review. “An issue is moot when the controversy has been so fully resolved that a judicial determination can have no actual effect.” Godwin v. State, 593 So.2d 211, 212 (Fla.1992). The Fergusons waived their challenge to the adequacy of the hospital’s notice and agreed to accept an award under NICA.[7] Thus, our holding regarding the ALJ’s jurisdiction under NICA will have no bearing on the Fergusons’ case. Accordingly, the Association’s petition for review as to the Ferguson case is hereby dismissed.[8]
B. All Children’s Hospital
I. The Purpose and Structure of NICA
NICA was enacted in 1988 to address the adverse impact that the high cost of medical malpractice insurance premiums was having on the delivery of obstetric services in Florida. See § 766.301, Fla. Stat. (Supp.1998). In NICA, the Legislature established the NICA Plan, § 766.302(8), Fla. Stat. (1997), “for the purpose of providing compensation, irrespective of fault, for birth-related neurological injury claims.” § 766.303(1), Fla. Stat. (1997). The NICA Plan is administered by the Association.[9]
When an infant suffers what may be a birth-related neurological injury,[10] NICA provides that the claimant (usually the infant’s parent)[11] must file a claim for corn- *711 pensation under the NICA Plan with the Association. § 766.305, Fla. Stat. (Supp. 1998).[12] The claim is then reviewed by a medical advisory panel. The panel makes a written recommendation as to whether the claim is compensable under the NICA Plan. § 766.308, Fla. Stat. (Supp.1998). After the panel makes its recommendation, the claim is then heard and determined in an administrative hearing before an ALJ. § 766.307, Fla. Stat. (1997).[13] The ALJ must consider, but is not bound by, the recommendation of the medical advisory panel. § 766.308(1), Fla. Stat. (Supp.1998).
Under the 1998 version of NICA, the ALJ is expressly required to make three independent findings “based upon all available evidence.” § 766.309(1), Fla. Stat. (1997). First, the ALJ must determine whether the claim is a birth-related neurological injury. § 766.309(l)(a), Fla. Stat. (1997). Second, the ALJ must determine whether the injury was caused by a participating health care provider, as defined in section 766.302(7). § 766.309(l)(b), Fla. Stat. Finally, if the first and second requirements are met, the ALJ must determine the amount of the award without any regard for fault. §§ 766.309(l)(c), 766.31(1), Fla. Stat. (1997).
If the ALJ determines that a claim is compensable, compensation under the NICA Plan becomes the claimant’s exclusive remedy. See § 766.303(2), Fla. Stat. (1997) (“The rights and remedies granted by this plan ... shall exclude all other rights and remedies of such infant ..., at common law or otherwise, against any person or entity directly involved with the labor, delivery, or immediate postdelivery resuscitation during which such injury occurs.”). A claimant may not bring or maintain a civil suit in violation of NICA’s exclusive remedy provision. § 766.304, Fla. Stat. (Supp.1998). (“[N]o civil action may be brought or continued in violation of the exclusiveness of remedy provisions of s. 766.303.”). If the claim is ultimately determined to be compensable, NICA’s exclusive remedy provision shields participating health care providers from a civil tort action based upon the same claim. See § 766.302(6)-(7), Fla. Stat. (1997).
However, as previously determined by this Court, there is a condition precedent to NICA’s exclusivity. Predelivery notice of the health care provider’s participation in the NICA Plan must be given as required by section 766.316. See Galen of Fla., Inc. v. Braniff 696 So.2d 308, 309-10 (Fla.1997) (“[T]he only logical reading of the statute is that before an obstetrical patient’s remedy is limited by the NICA plan, the patient must be given pre-deliv-ery notice of the health care provider’s participation in the plan.... [T]he purpose of the notice is to give an obstetrical patient an opportunity to make an informed choice between using a health care provider participating in the NICA plan or using a provider who is not a participant and thereby preserving her civil remedies.”). Section 766.316 provides that, except in the case of emergency or impracticability, a participating health care provider is required to furnish each obstetrical patient with notice that the NICA Plan’s “limited no-fault alternative for birth-related neuro *712 logical injuries” may be the patient’s exclusive remedy or means of receiving compensation for those injuries. This notice must be made using a form provided by the Association.
2. The Analytical Basis of the Conflict Question
In both All Children’s Hospital, Inc. and Ferguson, the Second District certified conflict with O’Leary, M.A., and Behan. The conflict is based on divergent views over the scope of the ALJ’s duties in the NICA claims process.[14]
The Second District held that “[tjhere is nothing in section 766.309 or elsewhere in NICA that gives the ALJ any responsibility or authority to determine ... that notice under section 766.316 was or was not properly given.” All Children’s Hosp., Inc., 863 So.2d at 456.[15] In essence, the Second District viewed the ALJ’s subject matter jurisdiction as limited to making the three determinations mandated by section 766.309(1). Under the 1998 statute, the three determinations mandated by section 766.309(1) were (a) whether the injury claimed is a birth-related neurological injury; (b) whether the obstetrical services were delivered by a health care provider that participates in the NICA Plan; and (c) the amount of any compensation. According to the Second District, since the ALJ’s jurisdiction was limited to these three tasks (which it viewed as related solely to whether an injury is compensable under NICA and, if so, the amount of compensation), the ALJ had no authority to determine anything related to notice. In other words, the Second District reasoned that instead of being relevant to compensability, notice is relevant solely to whether the NICA Plan is the exclusive remedy for the covered injuries.
The other district courts of appeal took a broader view of the ALJ’s subject matter jurisdiction. Each of these courts found jurisdiction in other provisions of the NICA statutory scheme, outside of section 766.309(1). The Fifth District was the first to do so in O’Leary, 757 So.2d 624. That court held that the ALJ has exclusive jurisdiction to make findings regarding whether the notice provided for by section 766.316 was either given or excused. Id. at 627. The Fifth District based its holding largely upon its analysis of three 1998 amendments to the NICA statute. Id. at 626-27. According to the Fifth District, these amendments were made in response to this Court’s decisions in Florida Birth- *713 Related Neurological Injury Compensation Ass’n v. McKaughan, 668 So.2d 974 (Fla.1996), and Galen of Florida, Inc. v. Braniff, 696 So.2d 308 (Fla.1997). O’Leary, 757 So.2d at 627. Specifically, the Fifth District viewed the 1998 amendments as indicating the Legislature’s intent to authorize the ALJ to make all determinations regarding a claim under NICA. Id. at 627-28. In reaching this conclusion, the Fifth District first presented the language of the 1998 amendments as follows:
In 1998, after the McKaughan and Braniff decisions, the legislature, in chapter 98-113, amended sections 766.301, 766.304, and 766.316, as follows:
[[Image here]]

Be It Enacted by the Legislature of the State of Florida:

Section 1. Paragraph (d) of subsection (1) of Section 766.301, Florida Statutes, is amended to read:
766.301 Legislative findings and intent.—
(1) The Legislature makes the following findings:
(d) The costs of birth-related neurological injury claims are particularly high and warrant the establishment of a limited system of compensation irrespective of fault. The issue of whether such claims are covered by this act must be determined exclusively in an administrative proceeding.
Section 2. Section 766.304, Florida Statutes, is amended to read:
766.304 Administrative law judge to determine claims.—
The administrative law judge shall hear and determine all claims filed pursuant to ss. 766.301-766.316 and shall exercise the full power and authority granted to her or him in chapter 120, as necessary, to carry out the purposes of such sections. The administrative law judge has exclusive jurisdiction to determine whether a claim filed under this act is compen-sable. No civil action may be brought until the determinations under s. 766.309 have been made by the administrative law judge. If the administrative law judge determines that the claimant is entitled to compensation from the association, no civil action may be brought or continued in violation of the exclusiveness of remedy provisions of s. 766.303. If it is determined that a claim filed under this act is not compensable, the doctrine of neither collateral estoppel nor res judicata shall prohibit the claimant from pursuing any and all civil remedies available under common law and statutory law. The findings of fact and conclusions of law of the administrative law judge shall not be admissible in any subsequent proceeding; however, the sworn testimony of any person and the exhibits introduced into evidence in the administrative case are admissible as impeachment in any subsequent civil action only against a party to the administrative proceeding, subject to the Rules of Evidence. An action may not be brought under ss. 766.301-766.316 if the claimant recovers or final judgment is entered. The division may adopt rules to promote the efficient administration of, and to minimize the cost associated with, the prosecution of claims.
Section 4. Section 766.316, Florida Statutes, is amended to read:
766.316 Notice to obstetrical patients of participation in the plan.— Each hospital with a participating physician on its staff and each participating physician, other than residents, assistant residents, and interns *714 deemed to be participating physicians under s. 766.314(4)(c), under the Florida Birth-Related Neurological Injury Compensation Plan shall provide notice to the obstetrical patients thereof as to the limited no-fault alternative for birth-related neurological injuries. Such notice shall be provided on forms furnished by the association and shall include a clear and concise explanation of a patient’s rights and limitations under the plan. The hospital or the participating physician may elect to have the patient sign a form acknowledging receipt of the notice form. Signature of the patient acknowledging receipt of the notice form raises a rebuttable presumption that the notice requirements of this section have been met. Notice need not be given to a patient when the patient has an emergency medical condition as defined in s. 395.002(8)(b) or when notice is not practicable.
Section 6. The amendments to sections 766.301 and 766.304, Florida Statutes, shall take effect July 1,1998, and shall apply only to claims filed on or after that date and to that extent shall apply retroactively regardless of the date of birth.
Section 7. Amendments to section 766.316, Florida Statutes, shall take effect July 1, 1998, and shall apply only to causes of action accruing on or after that date.
O’Leary, 757 So.2d at 626-27.
The Fifth District then interpreted the applicability of these 1998 amendments to the conflict question by stating:
The language used by the legislature in its amendment to the Act indicates that the administrative judge is to determine all matters relative to a claim. Notably, the determination of the adequacy of notice is not excluded from the duties of the administrative law judge. Section 766.304 states that the administrative law judge shall hear all claims and shall exercise the full power and authority granted that is necessary to carry out the purposes of the section. The section further grants exclusive jurisdiction to the administrative law judge to determine whether a claim is compensable and precludes any civil action until the issue of compensability is determined. We believe that under these amendments, any issue raising the immunity of a health provider, including the issue of whether the health provider satisfied the notice requirements of the Plan is an issue to be decided by the administrative law judge as one which relates to the question of whether the claim is compensable under the Plan. We recognize that lack of proper notice does not affect a claimant’s ability to obtain compensation from the Plan. However, a health provider who disputes a plaintiffs assertion of inadequate notice is raising the issue of whether a claim can only be compensated under the plan. All questions of compensability, including those which arise regarding the adequacy of notice, are properly decided in the administrative forum.
Our conclusion that the administrative forum is the intended exclusive forum to determine the notice question eliminates the “ping-pong effect,” that is, the trial court and the administrative law judge each throwing the case back to the other on this question. We also note that a section 766.316 notice issue is peculiar to a NICA claim. The 766.316 notice is not applicable to a common law tort or contract action. We also believe that it is economical and practicable to both the litigants and judicial system to have all *715 NICA issues determined by one tribunal.
Id. at 627-28.
This interpretation by the Fifth District in O’Leary was substantially followed by the First and Third Districts.[16] However, the Second District expressly considered and rejected this analysis in All Children’s Hospital, Inc. Though it agreed that “[sjince the adoption of the 1998 amendments, NICA is very clear that the determination of whether an injury is compen-sable is exclusively within the province of the ALJ,” it found that “[njothing in the 1998 amendments to NICA did anything to extend the jurisdiction of the ALJ to the issues of notice and immunity from tort liability.” All Children’s Hosp., Inc., 868 So.2d at 455-56. Instead, the Second District found that “[t]he issue of immunity from tort liability and the related issue of notice are an entirely different matter” from whether an injury is compensable under NICA. Id. at 456.
3. Resolving the Conflict Question
Again, the narrow question we must resolve is whether the 1998 version of NICA gives the ALJ jurisdiction to determine if the notice mandated by section 766.316 was provided. As previously stated, we disagree with the Second District’s holding that “[tjhere is nothing in section 766.309 or elsewhere in NICA that gives the ALJ any responsibility or authority to determine ... that notice under section 766.316 was or was not properly given.” All Children’s Hosp., Inc., 863 So.2d at 456. Instead, we agree with Judge Kahn’s analysis of this question in Tabb, 880 So.2d 1253, where he wrote:
The ALJ’s authority derives from section 766.304, Florida Statutes (2001):[17]
The administrative law judge shall hear and determine all claims filed pursuant to ss. 766.S01-766.S16 and shall exercise the full power and authority granted to her or him in chapter 120, as necessary to carry out the purposes of such sections. The administrative law judge has exclusive jurisdiction to determine whether a claim filed under this act is compen-sable. No civil action may be brought until the determinations under s. 766.309 have been made by the administrative law judge. If the administrative law judge determines that the claimant is entitled to compensation from the association, no civil action may be brought or continued in violation of the exclusiveness of remedy provisions of s. 766.303. If it is determined that a claim filed under this act *716 is not compensable, neither the doctrine of collateral estoppel nor res ju-dicata shall prohibit the claimant from pursuing any and all civil remedies available under common law and statutory law....
(emphasis added). In order to “hear and determine” a claim, an ALJ must, almost of necessity, decide whether notice was given, because if no notice was given, the' exclusivity provision of the statute does not apply. See § 766.316, Fla. Stat. (2001); Galen, 696 So.2d at 310-11. Further, an ALJ has “exclusive jurisdiction” to determine whether a claim is compensable under the NICA Plan. In the absence of notice, the Plan does not apply. Given these provisions, we are led to conclude that an ALJ has jurisdiction to determine whether notice was given. As established law provides, an ALJ must have jurisdiction to determine whether the ALJ has jurisdiction. See, e.g., Sun Ins. Co. v. Boyd, 105 So.2d 574, 575 (Fla.1958) (explaining that “a tribunal always has jurisdiction to determine its own jurisdiction”).
Notably, in 2003, the Legislature amended the NICA statute to add section 766.309(4), Florida Statutes:
If it is in the interest of judicial economy or if requested to by the claimant, the administrative law judge may bifurcate the proceeding addressing compensability and notice pursuant to s. 766.316 first, and addressing an award pursuant to s. 766.31, if any, in a separate proceeding. The administrative law judge may issue a final order on compensability and notice which is subject to appeal under s. 766.311, prior to issuance of an award pursuant to s. 766.31.
Ch. 03-416, § 77, at 4117, Laws of Fla. In passing the amendment, the Legislature implicitly acknowledged the existing case law indicating that an ALJ has jurisdiction to determine whether notice was provided pursuant to section 766.316. See generally, e.g., City of Hollywood v. Lombardi, 770 So.2d 1196, 1202 (Fla.2000) (explaining that the Legislature is presumed to know the judicial construction of a law when passing a new version of the law and to have adopted the prior judicial construction unless a contrary intent is expressed).
Other district courts of appeal had, before 2003, indicated that an ALJ has jurisdiction to determine whether the notice requirement was satisfied in a particular case. See O’Leary v. Fla. Birth-Related Neurological Injury Comp. Ass’n, 757 So.2d 624, 627 (Fla. 5th DCA 2000) (“The language used by the legislature in its amendment to the Act indicates that the administrative judge is to determine all matters relative to a claim. Notably, the determination of the adequacy of notice is not excluded from the duties of the administrative law judge.... [A]ny issue raising the immunity of a health provider, including the issue of whether the health provider satisfied the notice requirements of the Plan is an issue to be decided by the administrative law judge as one which relates to the question of whether the claim is compensable under the Plan.”); Univ. of Miami v. M.A., 793 So.2d 999 (Fla. 3d DCA 2001) (adopting decision in O’Leary). See also Gugelmin v. Div. of Admin. Hearings, 815 So.2d 764 (Fla. 4th DCA 2002); Behan v. Fla. Birth-Related Neurological Injury Comp. Ass’n, 664 So.2d 1173 (Fla. 4th DCA 1995).
Tabb, 880 So.2d at 1256-57.
Given our agreement with this analysis of NICA in Tabb, we hold that when notice is raised as part of a claim filed under NICA, an ALJ has jurisdiction *717 to make findings regarding whether a health care provider has satisfied the notice requirements of section 766.316, Florida Statutes.[18]

III. CONCLUSION

In conclusion, when the issue of whether notice was adequately provided pursuant to section 766.316 is raised in a NICA claim, we conclude that the ALJ has jurisdiction to determine whether the health care provider complied with the requirements of section 766.316. Therefore, we quash the Second District’s decision in All Children’s Hospital, and remand for further findings consistent with this opinion. We dismiss the petition to review Ferguson as moot.
It is so ordered.
WELLS, QUINCE, and CANTERO, JJ., concur.
LEWIS, C.J., dissents with an opinion, in which ANSTEAD and PARIENTE, JJ., concur.
ANSTEAD, J., dissents with an opinion, in which LEWIS, C.J., concurs.
PARIENTE, J., dissents with an opinion, in which LEWIS, C.J., and ANSTEAD, J., concurs.

. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.

. However, in light of these statutory amendments, the Second District later reached the opposite conclusion. In Weinstock v. Houvardas, 924 So.2d 982 (Fla. 2d DCA 2006), the Second District held that for claims made on or after September 15, 2003, an ALJ in a NICA proceeding has exclusive jurisdiction to determine whether the health care provider has given notice as required by section 766.316. This decision rested upon the 2003 amendments made to section 766.309 by chapter 2003-416, section 77 at 89, Laws of Florida (2003), and the September 15, 2003, effective date expressly provided for therein. The pertinent language of these 2003 amendments, as well as an amendment in 2006, is provided in footnote 18.

. Courtney Ann Glenn was born on September 30, 1997, at Bayfront Medical Center. All Childrens Hosp., Inc., 863 So.2d at 452. The neonatal nurses who assisted in the delivery and postdelivery resuscitation of Baby Glenn were provided to Bayfront Medical Center by All Children's Hospital. Id.

. Baby Glenn’s family filed suit in circuit court on June 30, 1998, and their third amended complaint named only All Children's Hospital as a defendant. 863 So.2d at 452. The Fergusons filed suit on May 26, 1999.

. As explained below, NICA claims are initially filed with the Association, the administrator of the NICA Plan. The Association makes an initial recommendation on whether the claim is compensable. See § 766.302(1), Fla. Stat. (1997); §§ 766.305, .308, .315, Fla. Stat. (Supp.1998). The Association’s recommendation on Baby Ferguson’s injuries was that they were compensable under the NICA Plan. The Association joined Morton Plant in its appeal when the ALJ failed to consider whether the claim was compensable. To the contrary, the Association's recommendation as to Baby Glenn's injuries was that they were not compensable, and, therefore, the Association did not join All Children's in its appeal of the ALJ’s order to the Second District.

. The Fergusons unsuccessfully argued that the Association lacked standing to continue with its appeal. See Ferguson, 869 So.2d at 689.

. The Association has stipulated that the Fer-gusons' claim is compensable. Although both the Association and Morton Plant initially appealed, Morton Plant settled with the Fergu-sons prior to oral argument before the Second District. Morton Plant and the Fergusons voluntarily dismissed their appeal and cross-appeal, respectively, and the Fergusons notified the Second District and NICA of their intent to accept a NICA award. The record is not clear whether the other defendant, nurse McCall, has also settled with the Fergusons, but she did not join in the appeal below or in this proceeding.

. Although the Association has stipulated that the Fergusons’ claim is compensable, the ALJ has not made any findings regarding the com-pensability of the claim.

. See § 766.302(1), Fla. Stat. (1997); see also §§ 766.314-.315, Fla. Stat. (Supp.1998) (detailing Plan funding and Association Board of Directors).

.A "birth-related neurological injury” is defined as an
injury to the brain or spinal cord of a live infant weighing at least 2,500 grams at birth caused by oxygen deprivation or mechanical injury occurring in the course of labor, delivery, or resuscitation in the immediate postdelivery period in a hospital, which renders the infant permanently and substantially mentally and physically impaired.
§ 766.302(2), Fla. Stat. (1997).

. "Claimant” is defined in applicable part as "any person who files a claim pursuant to s. 766.305 for compensation for a birth-related neurological injury to an infant. Such a claim may be filed by any legal representative *711 on behalf of an injured infant.” § 766.302(3), Fla. Stat. (1997).

. The statute of limitations for any civil action that might otherwise be brought for the injury is tolled by the filing of a NICA claim. See section 766.306, Fla. Stat. (1997).

. See § 766.301(l)(d), Fla. Stat. (Supp.1998) ("The issue of whether such claims are covered by this act must be determined exclusively in an administrative proceeding.”); § 766.304, Fla. Stat. (1997) ("The [ALJ] shall hear and determine all claims filed pursuant to ss. 766.301-766.316.”).

. In addition in Ferguson, the Second District certified conflict with the Fourth District’s opinion in Gugelmin on the conflict question. 815 So.2d at 764. However, because Ferguson is moot and because the Second District did not certify conflict with Gugelmin in All Childrens Hospital, Inc., we do not address Gugelmin in resolving this conflict. In Gugelmin, the Fourth District held that an ALJ may make findings of fact regarding whether notice was provided as required by section 766.316, but the ALJ cannot comment upon the legal effect of these findings on the claimant’s common law remedies and, in turn, the health care provider’s right to immunity from tort by requiring the claimant to make an election of remedies. 815 So.2d at 768. The Second District may not have certified conflict with Gugelmin in All Children's Hospital, Inc. because of its reliance on Gugelmin. The Second District cites Gugelmin for the proposition that "this court is authorized to set aside or modify a final administrative order, if there has been an erroneous interpretation of NICA or the ALJ has exceeded the scope of his authority.” All Children’s Hosp., Inc., 863 So.2d at 454 (citing Gugelmin, 815 So.2d at 767).

. The Second District reiterated this holding in Florida Health Sciences Center, Inc., v. Division of Administrative Hearings, 871 So.2d 1062, 1065 (Fla. 2d DCA 2004) ("No part of the NICA statute confers on the ALJ any authority to determine issues related to notice.”).

. The Fourth District's decisions in Behan and Gugelmin are also, in large part, aligned with the First, Third, and Fifth Districts' holdings that an ALJ has jurisdiction under NICA to determine whether notice was adequately provided. However, Behan rests upon a nuance that the First District takes into account but that is not considered by the other decisions. The Fourth District decided Behan in 1995, before this Court issued its decision in McKaughan, a decision later abrogated by the Legislature as noted by the Fifth District in O’Leary. In Behan, the Fourth District held that an ALJ must determine whether notice is adequate pursuant to section 766.316 before exercising jurisdiction to malte any determination with regard to a claim under NICA. 664 So.2d at 1174. The First District in Tabb cites a similar rationale for finding that an ALJ has exclusive jurisdiction over notice issues. 880 So.2d at 1256-57 ("In order to ‘hear and determine’ a claim, an ALJ must, almost of necessity, decide whether notice was given, because if no notice was given, the exclusivity provision of the statute does not apply.... As established law provides, an ALJ must have jurisdiction to determine whether the ALJ has jurisdiction.”) (citations omitted); see discussion of Judge Kahn’s analysis in part II.B.3, infra.

. The 1998 and 2001 versions of section 766.304 are identical.

. Our resolution of the conflict question is based upon the language of the NICA statute as it existed in 1998. However, for the sake of completeness, we note that our resolution is supported by the 2003 and 2006 amendments to section 766.309.
In 2003, section 766.309 was amended to add subsection (4) which states, in applicable part, that "[t]he administrative law judge may issue a final order on compensability and notice which is subject to appeal under s. 766.311, prior to issuance of an award pursuant to s. 766.31.” When the Second District decided Ferguson, it stated that it had no opinion as to whether the 2003 amendment addressed the issue of whether an ALJ has jurisdiction over notice issues under NICA. 869 So.2d at 690 n. 2. However, as we noted earlier in footnote 2, the Second District subsequently held that an ALJ has exclusive jurisdiction over notice issues involving NICA claims made on or after September 15, 2003, the effective date of the 2003 amendments. See Weinstock, 924 So.2d at 984.
Most recently, on May 2, 2006, chapter 2006-8, Laws of Florida, became law. Chapter 2006-8 added subsection (d) to section 766.309(1) as follows:
(1) The administrative law judge shall make the following determinations based upon all available evidence:

(d) Whether, if raised by the claimant or other party, the factual determinations regarding the notice requirements in s. 766.316 are satisfied. The administrative law judge has the exclusive jurisdiction to make these factual determinations.

Ch.2006-8, § 1, at 194, Laws of Fla. Section 2 states that this amendment "clarifies that since July 1, 1998, the administrative law judge has had the exclusive jurisdiction to make factual determinations as to whether the notice requirements in s. 766.316, Florida Statutes, are satisfied.” Ch.2006-8, § 2, at 194, Laws of Fla.